UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU

| | |
|---|---|
| Zhejiang Senya Board Industry Co., Ltd and Zhangzhou Wanjiamei Industry & Trade Co., Ltd.<br><br>Plaintiff,<br>v.<br><br>United States,<br>Defendant. | Court No. 26-002482 |

# MEMORANDUM OF LAW IN SUPPORT OF THE RULE 56.2 MOTION OF ZHEJIANG SENYA BOARD INDUSTRY CO., LTD AND ZHANGZHOU WANJIAMEI INDUSTRY & TRADE CO., LTD. FOR JUDGMENT UPON THE AGENCY RECORD

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Zhejiang Senya Board Industry Co., Ltd and Zhangzhou Wanjiamei Industry & Trade Co., Ltd.

Dated: October 27, 2026

# Table of Contents


Table of Contents ........ i

Table of Authorities ........ ii

I. INTRODUCTION ........ 1

II. STATEMENT PURSUANT TO RULE 56.2(c) ........ 2

A. Administrative Determination Under Review ........ 2

III. ISSUES OF LAW ........ 2

IV. SUMMARY OF ARGUMENTS ........ 4

V. STATEMENT OF FACTS ........ 4

VI. STANDARD OF REVIEW ........ 5

VII. ARGUMENT ........ 7

A. The Department's determination that certain suppliers of certain inputs were state authorities is not supported by the record ........ 7

B. The Department's finding that the provision of water for LTAR constitutes a benefit is fatally flawed ........ 8

C. The Department's use of Descartes data as a basis for freight financial ratios is not appropriate ........ 12

VIII. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Cases:

*Archer Daniels Midland Company, Cargill, Incorporated, and Tate & Lyle Americas, LLC* v. *United States*, 917 F.Supp.2d 1331 (Ct. Int'l Trade 2013)..................6, 7

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)................................................6

*Beijing Tianhai Indus. Co. v. United States*, 52 F. Supp. 3d 1351 (Ct. Int'l Trade 2015)..........................................................................................................................12

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,* 61 F. Supp. 3d 1306 (Ct. Int'l Trade 2015) ....................................................................................12

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974)..........................................................................................7

*Changzhou Trina Solar Energy Co., Ltd. v. US,* 255 F. Supp. 3d 1312 (Ct Intl. Trade 2017) ..........................................................................................................................13

*Changzhou Trina Solar Energy Co. V. United States,* 532 F. Supp. 3d 1333 (Ct. Int'l Trade 2021) ...............................................................................................*14, 15*

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) ...............................................................................................*7*

*Consolidated Edison Corp. v. Labor Board,* 305 U.S. 197 (1938).....................................................5

*Diversified Products Corp. v. United States*, 6 CIT 155(1983) .........................................................6

*F.lli de Cecco di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000) ......................................................................................................................*8*

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997)..................................................*6*

*Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)*...........................................................*5*

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. 2009)...............................................6

*Novosteel SA v. United States,* 284 F. 3d 1261 (Fed. Cir. 2002).......................................................6

*Risen Energy Co., Ltd. v. United States*, 570 F. Supp. 3d 1369, (Ct. Int'l Intl. Trade 2022).......................................................................................................................13,14

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) ......................................................6

T*ung Mung Dev. Co., v. United States*, 354 F.3d 1371(Fed. Cir. 2004)............................................6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951)............................................................5, 6

*USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487 (1987) .............................................6

Administrative

Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation of Wood Mouldings and Millwork Products from the

People's Republic of China issued in connection with *Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 85 Fed. Reg. 35900.(June 12, 2020) ........ 8,9

Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Wood Mouldings and Millwork Products from the People's Republic of China issued in connection with the *Wood Mouldings and Millwork Products from the People's Republic of China: Final Affirmative Countervailing Duty Determination*. 86 Fed. Reg. 67 (January 4, 2021) ........ 9

*Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Wood Mouldings and Millwork Products from the People's Republic of China;* 2020-2021 Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2020– 2021 88 Fed. Reg. 14122 (March 7, 2023) ........ 9, 10

*Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2021 Countervailing Duty Administrative Review* issued in connection with Wood Mouldings and Millwork Products from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020–2021, 88 Fed. Reg. 62319 (September 11, 2023) ........ 10

*Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Wood Mouldings and Millwork Products from the People's Republic of China; 2022* issued in connection with Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2023 90 Fed. Reg. 24778 (June 12, 2025) ........ 10, 11

*Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review Wood Mouldings and Millwork Products from the People's Republic of China; 2022* issued in connection with Wood Mouldings and Millwork Products From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 68858 (August 28, 2024) ........ 11

19 C.F.R. §351.511(a)(2)(ii) ........ 12

19 C.F.R. §351.511(a)(2)(iv) ........ 12

Statute:

19 U.S.C. §1516a(a)(2)(A)(i)(I) ........ 2

19 U.S.C. §1516a(a)(2)(B)(iii) ........ 2

19 U.S.C. §1516a(b) .......... 5
19 U.S.C. §1673d(c)(5) .......... 5
19 U.S.C. § 1677(5)(B) .......... 7
28 U.S.C. §1581(c) .......... 2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU

| | |
|---|---|
| Zhejiang Senya Board Industry Co., Ltd and Zhangzhou Wanjiamei Industry & Trade Co., Ltd.<br><br>Plaintiff,<br><br>v.<br><br>United States,<br><br>Defendant. | Court No. 26-002482 |

## I. INTRODUCTION

This is an appeal from the final results of the Countervailing Duty Administrative Review in *Wood Moulding and Millwork Products from the PRC: Final Results of Countervailing Duty Administrative Review, 91 Fed. Reg. 8404* (February 23, 2026) ("Final Determination") and its accompanying Issues and Decision Memorandum (February 18, 2026) ("IDM"). Plaintiffs Zhejiang Senya Board Industry Co., Ltd and Zhangzhou Wanjiamei Industry & Trade Co., Ltd. are Corporations organized under the laws of the People's Republic of China. Plaintiffs produced and/or exported Wood Moulding in the People's Republic of China and exported the same to the United States. All plaintiffs were active participants in the Department of Commerce countervailing duty administrative review and plaintiff Zhejiang Senya Board Industry Co., Ltd was designated as a mandatory respondent.

Plaintiffs assert the following errors in the Commerce Department's ("Commerce" or "Department") final determination:

- The Department's determination that certain suppliers of certain inputs were state authorities is not supported by the record. Many of these

suppliers were individuals and do not meet the definition of State Authorities.

- The Department's determination finding that the provision of water for LTAR constitutes a benefit is flawed. The Department found that the provision of water did not provide a benefit in prior segments of this investigation and there is no evidence that the facts substantially changed for this review. The Department cannot make such a change in the absence of any evidence supporting this change and cannot do so based on mere speculation.

- The Department's use of Descartes data as a basis for freight financial ratios is not appropriate. The data provided for Xeneta was superior to that of Descartes and should have been used.

## II. STATEMENT PURSUANT TO RULE 56.2(c)

### A. Administrative Determination Under Review

This action is brought pursuant to the authority of 19 U.S.C. §1516a(a)(2)(A)(i)(I), 19 U.S.C. §1516a(a)(2)(B)(iii), and 28 U.S.C. §1581(c) to contest the final results of the *Countervailing Duty Administrative Review in Wood Moulding and Millwork Products from the PRC: Final Results of Countervailing Duty Administrative Review*, 91 Fed. Reg. 8404 (February 23, 2026) ("Final Determination") (P.R. 14) and the accompanying Issues and Decision Memorandum (February 18, 2026) ("IDM"). (P.R. 15).

In the Final Results, Commerce calculated a rate of 26.51% for plaintiff Zhejiang Senya Board Industry Co., Ltd and a rate of 21.39% for non-selected respondents, including the other plaintiffs.

## III. ISSUES OF LAW

The Plaintiffs present the following issues. As detailed herein, Commerce's determination was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law. The issues are:

- **The Department's determination that certain suppliers of certain inputs were state authorities is not supported by the record.**

In the final results the Department found that the suppliers of certain inputs were state authorities. Such determination is against the evidence of record. The record shows that a significant number of these suppliers were individuals, the diametric opposite of a state authority and thus should be excluded from any calculation.

- **The Department's determination finding that the provision of water for LTAR constitutes a benefit is flawed. The Department found that the provision of water did not provide a benefit in prior segments of this investigation and there is no evidence that the facts substantially changed for this review. The Department cannot make such a change in the absence of any evidence supporting this change.**
-

In the Department's preliminary and final determinations, the Department found that water was provided for LTAR and thus there was a countervailable benefit. As established on the record, in prior periods of review, the Department found that the provision of water for LTAR did not exist. There were no new significant facts of record alleged, and the Department thus had no basis to change its determination.

- **The Department's use of Descartes data as a basis for freight financial ratios is not appropriate. The data provided for Xeneta was superior to that of Descartes and should have been used.**

In calculating the rates, the Department used data sourced from Descartes as a basis for freight financial ratios. The Department also had of record data for a second entity – Xeneta – and even though such data was superior, the Department refused to use such superior data.

## IV. SUMMARY OF ARGUMENTS

The Department committed multiple errors which artificially increased the margin. Each of these errors are significant and the matter should be remanded to the Department to correct such errors.

- The evidence of record established that certain suppliers of inputs allegedly provided for LTAR were private individuals and were not state controlled entities. An individual is not an entity and thus cannot be a state authority. Benefits provided for LTAR must be provided by a state authority.

- The Department's cannot ignore prior precedent and a consistent position that the provision of water for LTAR in this matter does not constitute a benefit. The Department can only change from positions in prior reviews with good cause and a change in facts supporting such change.

- In calculating Ocean Freight ratios the Department had two pools of benchmark data – that based on Descartes and that based on Xeneta. The Department erred when it refused to use the Xeneta data and used the Descartes data. The Descartes data is badly flawed. It is not contemporaneous; it is based on a single source; it has a limited number of transactions and is otherwise not usable. In contrast, the data provided for Xeneta is superior. It is broad based, contemporaneous and covers multiple data points.

## V. STATEMENT OF FACTS

The antidumping duty administrative review of Wood Mouldings and Millwork Products From the People's Republic of China for 2023 period was initiated on April 9, 2024. See *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 89 Fed, Reg. 24,780 (April 9, 2024)) (P.R. 268*).* On June 16, 2025, Commerce published its preliminary results as *Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2023*, 90 Fed. Reg. 24778 (June 16, 2025) *(P.R. 52)* accompanied by Commerce's *Issues and Decisions*. (P.R. 53).

Commerce issued its final results on February 23, 2026 and these results were published in the Federal Register as *Wood Mouldings and Millwork Products From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 8408 (February 23, 2026). In the final results the Department assigned a rate of 26.51% to plaintiff Zhejiang Senya Board Industry Co., Ltd and a rate of 21.39% for non-selected companies including plaintiff Zhangzhou Wanjiamei Industry & Trade Co., Ltd. (P.R. 14).

## VI. STANDARD OF REVIEW

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether Congress has directly spoken to the precise question at issue.

If the statute is silent or ambiguous with respect to the specific issue, the Supreme Court has held that it is responsibility of the Federal Courts to determine the meaning of the law. *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). Loper* stated in relevant part "*Chevron* is overruled. Courts must exercise their dependent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright* 144 S.Ct. 2244 at 2273.

Furthermore, once the statute has been properly interpreted by the Court, the question is then whether the decision is supported by substantial evidence. Substantial evidence is well defined by Court precedent. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor*

*Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and

arbitrary and capricious or contrary to law}, while "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

## VII. <u>ARGUMENT</u>

### A. The Department's determination that certain suppliers of certain inputs were state authorities is not supported by the record

In the final results the Department found that the suppliers of certain inputs were state authorities. Such determination is against the evidence of record. The record shows that these suppliers include individuals. In **Exhibit SS-5** to plaintiff Senya's February 25, 2025 supplemental questionnaire (C.R. 38) the suppliers of the various types of sawn timber were listed. While the Department properly excluded from the calculation those materials sourced from foreign producers, the Department continued to include in its LTAR calculation the Pine and the Poplar, even though such materials were supplied by individuals, and not companies. An individual is not a "state authority" nor can it be reasonably characterized as a "state authority". As noted by the Court:

> Commerce asserts that it did not deviate from this principle, but that the adverse impact to RZBC of the AFA finding is a function of the specific information sought in countervailing duty cases. 19 U.S.C. § 1677(5)(B) sets forth the elements of a countervailable subsidy — "an authority . . . provides a financial contribution . . . to a person and a benefit is thereby conferred." Section 1677(5)(B) also states that "**`authority' means a government of a country or any public entity within the territory of the country.**" Commerce, therefore, needed to determine not only who RZBC's sulfuric acid producers were, but whether they were government- or publicly-controlled as to satisfy the definition of "authority" under § 1677(5)(B).

> *Archer Daniels Midland Company, Cargill, Incorporated, and Tate & Lyle Americas, LLC v. United States*, 917 F.Supp.2d 1331, 1341 (Ct. Int'l Trade 2013) (Emphasis Added)

The Department's determination ignores the key fact that an individual is not a government of a country or any public entity within the territory of the country. An individual is not an authority. Under the express language of the statute, authorities are limited to the government or a "public entity". The result of this is the attribution of an LTAR subsidy where none was provided.

This attribution creates an artificially enhanced margin and is contrary to the primary direction to the Department of finding the most accurate results. see *F.lli de Cecco di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000). The Court should find that the Department's inclusion of individuals in the LTAR analysis was improper and should order that the Department recalculate this portion of the margin without these transactions.

.

B. The Department's Finding that the Provision of Water for LTAR constitutes a Benefit is Fatally Flawed

In the final results, the Department found that water was provided for LTAR and thus provided a benefit. There was an investigation and two prior administrative reviews. In the investigation and the previous reviews the Department did not find that water was provided to LTAR.

In the investigation the Department stated in the preliminary determination:

> The Water Law does not indicate that there is a national government program for assigning or approving water tariff rates. Rather, laws and regulations at the national level only set the general guidelines on the use of the water. More importantly, the record evidence does not demonstrate that the GOC provides water for LTAR to certain favored industries.227 Thus, we are analyzing this program at the sub-national level. We note that while there may have, in the past, been a water program in Jiangsu

Province, which the petitioner relied upon as evidence of specificity, that program has been terminated.

Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation of Wood Mouldings and Millwork Products from the People's Republic of China at B.1. issued in connection with *Wood Mouldings and Millwork Products From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 85 Fed. Reg. 35900.(June 12, 2020)

This was confirmed in the final determination which stated:

B. Programs Determined Not to Confer a Countervailable Benefit.

Commerce made no changes to its Preliminary Determination with regard to programs determined not to confer a countervailable benefit.

1. Provision of Water for LTAR

Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Wood Mouldings and Millwork Products from the People's Republic of China at page 7 issued in connection with the *Wood Mouldings and Millwork*
*Products From the People's Republic of China: Final Affirmative Countervailing Duty Determination*. 86 Fed. Reg. 67 (January 4, 2021)

In the preliminary results of the 1[st] review the Department stated:

1. Provision of Water for LTAR Commerce determined in the investigation segment of this proceeding that there was no national water program in China and this program did not provide a benefit to respondents in either Fujian Province or Youxi County. Specifically, we found that the respondents in the investigation paid the local water tariff rate and did not pay a preferential rate based on industry or location, and the GOC guidelines for water rates and the provincial and municipal levels did not set forth guidelines for preferential pricing. We found in the investigation that there was no evidence demonstrating that respondents paid for water under preferential rates for the millwork products industry at either the national or local levels of government.305 The GOC reported that there were no changes to the provision of water from the investigation at the provincial or municipal level, and the responding companies reported purchasing water based on the provincial and municipal water provision system at the same rate we examined in the investigation. Because neither the GOC nor the respondents reported changes to the program since the

> investigation, absent new information on the record indicating otherwise, we are continuing to find that the provision of water for LTAR did not confer a countervailable benefit to respondents during the POR.

*Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Wood Mouldings and Millwork Products from the People's Republic of China;* 2020-2021 at 55 issued in connection with C-570–118] Wood Mouldings and Millwork Products From the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2020– 2021 88 Fed. Reg. 14122 (March 7, 2023)

In the final results of the 1st review the Department confirmed the preliminary determination.

See *Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2021 Countervailing Duty Administrative Review* at 15 issued in connection with Wood Mouldings and Millwork Products From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020–2021, 88 Fed. Reg. 62319 (September 11, 2023)

In the preliminary results of the second review the Department stated:

1. Provision of Water for LTAR Commerce determined in the investigation and first review segments of this proceeding that there was no national water program in China and this program did not provide a benefit to respondents in either Fujian Province or Youxi County. Specifically, we found that the respondents in the investigation paid the local water tariff rate and did not pay a preferential rate based on industry or location, and the GOC guidelines for water rates and the provincial and municipal levels did not set forth guidelines for preferential pricing. We found in the investigation that there was no evidence demonstrating that respondents paid for water under preferential rates for the millwork products industry at either the national or local levels of government. The GOC did not report any changes to the provision of water from the investigation or first administrative review segments, and the responding companies reported purchasing water based on the provincial and municipal water provision system at the same rate we examined in these earlier segments. Because neither the GOC nor

> the respondents reported changes to the program since these earlier segments, absent new information on the record indicating otherwise, we are continuing to find that the provision of water for LTAR did not confer a countervailable benefit to respondents during the POR.

See *Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Wood Mouldings and Millwork Products from the People's Republic of China; 2022* at 62 issued in connection with Wood Mouldings and Millwork Products From the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2023 90 Fed. Reg. 24778 (June 12, 2025)

In the final results the Department upheld the preliminary determination.

See *Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review Wood Mouldings and Millwork Products from the People's Republic of China; 2022* at 12 issued in connection with Wood Mouldings and Millwork Products From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 68858 (August 28, 2024)

In the review before the Court, the Department determined that water was provided for LTAR. It was based first on a finding that the Government of China had not participated and second based on the fact that the specific water rate had changed. (Final I&D memo at 34-36). Both of these are unavailing. With respect to the first, the non-participation of the GoC is not sufficient to find a change where, as here, we have a consistent practice before the Department and a fully cooperative respondent did not provide any information about a change of program. Finding this would be sufficient would immediately convert any non-cooperation into essentially a finding that every program in such case was countervailable. Such action would be contrary to Department practice of not applying total AFA where only the Government does not fully cooperate.

Secondly, the Department cited a small change in the rate (final I&D memo)

was evidence that the program might have changed. However, a change in a rate is not a change in a program.

In sum, there is no credible evidence that the program may have changed and thus the Department should have followed the well-established precedent in this case and found that water was not supplied for LTAR.

C. The Department's use of Descartes data as a basis for freight financial ratios is not appropriate.

In the final results the Department calculated the freight financial ratios using data sourced from Descartes as a basis for freight financial ratios. The Department also had of record data for a second entity – Xeneta – and even though such data was superior, the Department refused to use such superior data.

Generally, when the Department uses tier-two benchmarks it considers whether it is getting a world benchmark that would be comparable to what purchasers in China would obtain. In selecting a world market price, Commerce will "seek" to measure the adequacy of remuneration by comparing the government price to a "world market" price. 19 C.F.R. §351.511(a)(2)(ii). Where there is more than one commercially available "world market price," Commerce will average such prices, to the extent practicable. See 19 C.F.R. §351.511(a)(2)(iv). *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,* 61 F. Supp. 3d 1306, 1332 (Ct. Int'l Trade 2015); see also *Beijing Tianhai Indus. Co. v. United States*, 52 F. Supp. 3d 1351, 1374 (Ct. Int'l Trade 2015)

In this matter, the Department failed to properly rely upon ocean freight data that is reasonably reflective of the price respondents paid or would pay for imported inputs. The Descartes prices are not reasonable commercial prices that respondents would pay for ocean freight to import such materials. Simply put the Descartes data is not a world benchmark. The source is only for USA routes, is based on a single

repeating datapoint from a single shipping source and is based on a rate from 2001. (C.R. 40 and 43).

Initially, the Descartes data is not contemporaneous. As is apparent from a review of the data (C.R. 40 and 43), the Descartes data is based on data from 2001. This is a major flaw. As noted by the Court of International Trade in *Changzhou Trina Solar Energy Co., Ltd. v. US,* 255 F. Supp. 3d 1312 (Ct Intl. Trade 2017) the Court stated:

> JA Solar's data is contemporaneous with the POR while SolarWorld's is not. See SolarWorld Freight Benchmark Data at Exs. 2-4 (providing ocean freight data for the year 2012). Although Commerce has in past proceedings used price inflators to adjust data to be contemporaneous with the POR, the government correctly states that **Commerce does so only when there is not contemporaneous data on the record,** a point SolarWorld does not contest. See, e.g., Prelim. Determination Analysis for JA Solar at 8, PD 200 (Dec. 31, 2015) (using price inflators and deflators to adjust land-use right prices to be contemporaneous with the POR when no party submitted land-use rights benchmarks). Commerce explains this preference for contemporaneous data by stating that "non-contemporaneous freight rate data may have been affected by factors not present during the POR, for example, changes in demand for freight from year-to-year, changing energy costs, or construction of new ports, or inability to use particular ports.
> *Changzhou Trina* at 1322-23

This flaw alone, in light of the availability of other contemporaneous data, should be sufficient to result in the rejection of the Descartes data. This is not the only major flaw with the Descartes data.

The Descartes data has also been criticized in *Risen Energy Co., Ltd. v. United States*, 570 F. Supp. 3d 1369, (Ct. Int’l Intl. Trade 2022) which found:

> The Descartes data appears to be sourced from limited samples because many of the shipments use the same tariff codes and freight forwarder codes. Risen asserts that this reflects that the provided prices are "only one actual rate from only one company." Further, some of the data is marked as an "LTL" rate, which is a less than a container load shipment

> rate and that is more expensive than a normal commercial shipment rate.
>
> * * *
>
> Thus, the court remands to Commerce to reconsider the flaws raised by Plaintiffs. The court acknowledges that in some contexts, such data might result in a reasonably determination of the world market price. Here, however, Commerce should also consider the language and purpose of the controlling regulation to decide whether it is necessary to use the Descartes data to arrive at a "world market price" and discuss the identified flaws in the data. Presently, the analysis does not consider these flaws and whether the resulting Descartes data reasonably "reflect[s] the price a firm actually paid or would pay if it imported the product."

*Risen* at 1379. (Citations Omitted)

Finally, the Descartes data is essentially only based on shipments between the US and China and does not reflect a range of destinations. It is also based on transactions by a single shipper. Petitioner Benchmarks (December 3, 2024) at Exhibit 8. (P.R. 96-97).

In sum, the Descartes data is not contemporary and does not come from a broad base of data, but rather is essentially based on a single data point. Such data does not satisfy any of the appropriate tests for using such data as a valid benchmark.

In contrast, the Xeneta data is superior, satisfying all of the appropriate tests as it is contemporary and broad based. While it does not fully breakdown all of the charges, such as brokerage and handling, the argument that this makes this data less usable was rejected by the Court. The Court stated:

> However, Commerce finds that the Xeneta data is more specific to the shipping routes used by Trina and represents a broader market average than the Maersk data. In support of these findings, Commerce notes that the Xeneta rates cover all the freight routes used by Trina, while the Maersk rates only cover approximately 30% of the routes. Commerce further states that the Xeneta data "includes thousands of actual

> shipments covering every day of the POR while the Maersk data comprise 32 price quotes, with 15 of the quotes from only one day of the POR." Therefore, Commerce concludes that the Xeneta data is the best available information with which to value Trina's international freight costs.
>
> Commerce's analysis and decision to use the Xeneta data are reasonable, supported by substantial evidence, and in accordance with law.

*Changzhou Trina Solar Energy Co. V. United States,* 532 F. Supp. 3d 1333 (Ct. Int'l Trade 2021)(Citations Omitted)

Critically, the Xeneta data is reasonably reflective of world market prices,. Xeneta is an actual world ocean freight benchmarking source. The company gathers several hundred thousand rates per month for the purpose of providing reliable benchmarks for the cost of ocean freight. See Yinfeng Benchmarks (December 3, 2024) at Exhibit 4. (P.R. 101) For normal commercial routes, the benchmarks are based on several hundred valid rates per day. Before Xeneta will even make information available on a particular route, a minimum of 4 rates per route, per day, per equipment (i.e. container type) is required. Therefore, a monthly benchmark for any particular route would be based on at numerous individual datapoints

The data supplied to the Department in this review contains Xeneta daily ocean benchmarks for fifteen major routes. Antwerp, Barcelona, Buenos Aires, Busan, Los Angeles, New York, Hamburg, Jakarta, Tokyo, Mumbai, Tanjung Pelapas, Dubai, Laem Chabang, Singapore, Durban, and Haiphong. (C.R. 40 and 43.) These are major, mature commercial routes. The Xeneta data contains thousands of datapoints. The collected daily data is based on numerous carriers operating on major routes around the world. This data is fully and completely reflective of prevailing market conditions for freight.

Accordingly, the Xeneta data, even with its flaws, is vastly superior to the Descartes data. The matter should be remanded to the Department with instructions

that the Department use the Xeneta data in the final calculations.

## VIII. CONCLUSION

The facts in this case establish that:

- The Department improperly defined several individual suppliers of inputs as state authorities. Evidence of record established that these suppliers were private individuals and were not definitionally state controlled entities. The Court should confirm that an individual is not an entity and thus cannot be a state authority.

- The Department ignored its consistent practice in prior reviews where it determined that provided water was not an LTAR benefit. In this matter there are no facts of record which supported the finding of a factual change. The Department can only change from positions in prior reviews with good cause and a change in facts supporting such change. In the absence of such change, the Court should find that the Department's change in position is unlawful.

- The Department should have calculated Ocean Freight benchmark data using the Xeneta data. The Department erred when it refused to use the Xeneta data and used the Descartes data.

The Court should remand this matter to the Department to correct these errors.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Zhejiang Senya Board
Industry Co., Ltd and Zhangzhou
Wanjiamei Industry & Trade Co., Ltd.

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date October 27, 2026

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Baskerville Old Face 14-point font.

/s/ David J. Craven

David J. Craven
Counsel to Plaintiffs Zhejiang Senya Board Industry Co., Ltd and Zhangzhou Wanjiamei Industry & Trade Co., Ltd.

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date: October 27, 2026